Rob Bonta
Attorney General of California
Sara J. Drake
Senior Assistant Attorney General
T. Michelle Laird
Supervising Deputy Attorney General
Timothy M. Muscat, State Bar No. 148944
B. Jane Crue, State Bar No. 210122
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7787
  Fax: (916) 323-2319
  E-mail: Jane.Crue@doj.ca.gov
*Attorneys for State Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALTURAS INDIAN RANCHERIA, a federally recognized Indian tribe,**<br><br>Plaintiff,<br><br>v.<br><br>**GAVIN NEWSOM, Governor of the State of California; and the STATE OF CALIFORNIA,**<br><br>Defendants. | 2:22-cv-01486-KJM-DMC<br><br>**STATE DEFENDANTS' COMBINED REPLY TO PLAINTIFF'S OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT'S SIXTH AND SEVENTH CLAIMS FOR RELIEF AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS SIX AND SEVEN**<br><br>Date:          March 31, 2023<br>Time:         10:00 a.m.<br>Dept:          Courtroom 3<br>Judge:        The Honorable Kimberly L. Mueller<br>Trial Date:   None Set<br>Action Filed:  8/22/2022 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I.    The State Defendants' Motion to Dismiss Should Be Granted Because the Tribe's Sixth and Seventh Claims Fail to Allege Any Cognizable Cause of Action ..................................................................................................................... 2

    A.    Under Section 12012.25's Plain and Ordinary Language, the Statute Does Not Provide Alturas With an Express or Standing Offer Compact ................................................................................................... 3

    B.    Under Section 12012.25's Plain and Ordinary Language, Alturas Did Not Demand a Materially Identical Compact ................................... 6

II.    Alturas's Summary Judgment Motion on the Sixth and Seventh Claims Should Be Denied ................................................................................................... 7

    A.    Because the State Defendants Did Not Violate Sections 12012.25 and 98005, Alturas's Summary Judgment Motion Must Be Denied .......... 7

    B.    Even if State Defendants Did Not Comply With Section 12012.25, Their Undisputed Conduct Does Not, by Itself, Constitute a Violation of IGRA's Duty to Negotiate in Good Faith ............................. 8

    C.    Alturas's Summary Judgment Motion is Premature in the Absence of a Filed Joint Record of Negotiations ................................................... 11

    D.    Even in the Absence of a RON, the Documents Submitted by Alturas in Support of Its Motion Include Disputed Facts That Prevent Summary Judgment ..................................................................... 12

    E.    Alturas's Summary Judgment Motion Should Be Denied Because the State Defendants Have Not Waived Sovereign Immunity for State Law Claims .................................................................................... 14

CONCLUSION ................................................................................................................... 16

i

State Defs.' Reply to Pl.'s. Opp'n to Defs.' Mot. to Dismiss and
Opp. to Pl.'s Mot. Summ. J. (2:22-cv-01486-KJM-DMC)

# TABLE OF AUTHORITIES

**Page**

CASES

*Bear River Band of Rohnerville v. State of California*
    No. 20-cv-01539-AWI-SKO ............................................................................ 11

*Bishop Paiute Tribe v. Newsom*
    No. 20-cv-01318-AWI-SKO ............................................................................ 11

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Community v. State of California*
    No. 20-cv-01585-AWI-SKO ............................................................................ 11

*Cahuilla Band of Indians v. State of California*
    No. 20-cv-01630-AWI-SKO ............................................................................ 12

*Catlin v. Superior Court*
    51 Cal. 4th 300 (2011) .................................................................................... 4

*Celotex Corporation v. Catrett*
    477 U.S. 317 (1986) ........................................................................................ 12

*Chemehuevi Indian Tribe v. Newsom*
    919 F.3d 1148 (9th Cir. 2019) ........................................................................ 6

*Cheyenne River Sioux Tribe v. South Dakota*
    3 F.3d 273 (8th Cir. 1993) .............................................................................. 10

*Chicken Ranch Rancheria of Me-Wuk Indians et al. v. Newsom*
    No. 19-cv-00024-AWI-SKO ........................................................................... 11

*Chicken Ranch Rancheria of Me-Wuk Indians v. California*
    42 F.4th 1024 (9th Cir. 2022) ........................................................... 9, 10, 12, 14

*Ciganek v. Portfolio Recovery Associates, LLC*
    190 F. Supp. 3d 908 (N.D. Cal. 2016) .......................................................... 4

*Halbert's Lumber, Inc. v. Lucky Stores, Inc.*
    6 Cal. App. 4th 1233 (1992) ........................................................................... 4, 5

*Hotel Employees & Restaurant Employees International Union v. Davis*
    21 Cal. 4th 585 (1999) .................................................................................... 15

*In re Indian Gaming Related Cases*
    331 F.3d 1094 (9th Cir. 2003) ........................................................................ 9

ii

# TABLE OF AUTHORITIES
### (continued)

Page

*In re Indian Gaming Related Cases v. State of California*
   147 F. Supp. 2d 1011 (N.D. Cal. 2001) ................................................ 9

*People v. Skiles*
   51 Cal. 4th 1178 (2011) ................................................................. 4

*Pit River Tribe v. Newsom*
   No. 20-cv-01918-AWI-SKO .......................................................... 12

*Rincon Band of Luiseno Mission Indians v. Schwarzenegger*
   602 F.3d 1019 (9th.Cir. 2010) ...................................................... 11

*Soboba Band of Luiseno Indians v. State of California*
   No. 20-cv-01147-AWI-SKO .......................................................... 11

*United Auburn Indian Community. v. Newsom*
   10 Cal.5th 538 (2020) ................................................................. 3

STATUTES

25 United States Code
   §§ 2701-2721 ........................................................................... 1
   § 2710(d)(3)(A) ........................................................................ 9
   § 2710(d)(3)(C)(i)-(vii) .............................................................. 10
   § 2710(d)(3)(C)(vii) .................................................................. 10
   § 2710(d)(7)(B) ........................................................................ 2
   § 2710(d)(7)(B)(ii)(II) ................................................................ 2
   § 2710(d)(7)(B)(iii) ........................................................ 8, 9, 10, 12
   § 2710(d)(7)(B)(iii-vii) ................................................................ 2

California Government Code
   § 12012.25 ........................................................................ *passim*
   § 12012.25(a) ........................................................................ 3, 7
   §§ 12012.25(a)(1)-(57) ................................................................ 3
   §§ 12012.25(a)-(c) ..................................................................... 5
   §§ 12012.25(a)-(d) ..................................................................... 3
   § 12012.25(b) ..................................................................... *passim*
   § 12012.25(b)(1) ..................................................................... 3, 6
   § 12012.25(b)(2) ....................................................................... 3
   § 98005 ...................................................................... 3, 7, 8, 15

Indian Gaming Regulatory Act
   18 U.S.C. §§ 1166-1168; 25 U.S.C. §§ 2701-2721 ......................... *passim*

iii

# TABLE OF AUTHORITIES
### (continued)

Page

**COURT RULES**

Federal Rule of Civil Procedure
   56(a) ................................................................................................................... 12

iv

**INTRODUCTION**

In response to the State Defendants' Memorandum of Points and Authorities in Support of their Motion to Dismiss the Complaint's Sixth and Seventh Claims for Relief (Motion to Dismiss) (Doc. 20-1), Alturas Indian Rancheria (Alturas or Tribe) filed Plaintiff's Combined Brief in Opposition to Defendant's Motion to Dismiss Claims Six & Seven and in Support of Plaintiff's Motion for Summary Judgment on Claims Six & Seven (Opposition and Motion) (Doc. 25). Consistent with this Court's Order on December 28, 2022 (Doc. 29), the State of California and Governor Gavin Newsom (State Defendants) file this brief in response to the arguments raised in the Tribe's Opposition and Motion.

The sixth claim in Alturas's Complaint alleges that the State Defendants violated California Government Code section 12012.25 (Section 12012.25) because the Governor "refused to negotiate a Tribal-State compact that is materially identical to the Model Compact and submit it to the State Legislature." Compl. at ¶ 219. The seventh claim alleges that by refusing to negotiate and submit a compact that is materially identical to the Tribe's 1999 compact in violation of state law, State Defendants failed to negotiate in good faith under the Indian Gaming Regulatory Act (IGRA) 18 U.S.C. §§ 1166-1168; 25 U.S.C. §§ 2701-2721. *Id.* at ¶¶ 223-224.

This Court should grant the State Defendants' Motion to Dismiss the sixth and seventh claims in Alturas's Complaint for three reasons. First, as a matter of law, Section 12012.25 does not create a cause of action against State Defendants. Rather, it designates the Governor with responsibility for negotiating tribal-state class III gaming compacts and vests the Governor with the discretion to execute a compact and to certify a compact as materially identical to others executed in 1999. Further, it does not impose any state-law duty of care on the State Defendants to negotiate in good faith. Second, Section 12012.25 does not provide Alturas with an express or standing offer of a class III gaming compact under IGRA. Rather, based on Section 12012.25(b)'s plain and ordinary language, this statute establishes an alternate ratification process for executed compacts that the Governor certifies are "materially identical" to the compacts the State of California (State) executed in 1999. As explained below, because the State and Alturas have not completed negotiations and entered into a new compact, Section 12012.25(b) is not

1

1   inapplicable to this case.  Third, even if Alturas is correct in its far-reaching interpretation of

2   Section 12012.25, this statute would remain inapplicable because the Tribe never requested a

3   compact with materially identical terms.

4        In addition to granting the State Defendants' Motion to Dismiss, this Court should deny

5   Alturas's summary judgment motion on its sixth and seventh claims.  Summary judgment is

6   improper for the same reasons that support the State Defendants' Motion to Dismiss.  Further,

7   summary judgment is premature at this early procedural setting, particularly because the parties

8   have not yet filed a joint record of negotiations (RON), and there are factual disputes that prevent

9   summary judgment in the Tribe's favor.  Alturas's claims that State Defendants violated state law

10  also fail to show, by themselves, a violation of IGRA's duty to negotiate in good faith or that

11  there is a corresponding duty and cause of action under state law for the Governor to negotiate in

12  good faith.  Finally, the Court should deny Alturas's requested summary judgment because the

13  State has not waived its sovereign immunity defense to any state-law claims.

14                                        **ARGUMENT**

15  **I.    THE STATE DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED BECAUSE**
        **THE TRIBE'S SIXTH AND SEVENTH CLAIMS FAIL TO ALLEGE ANY COGNIZABLE**
16      **CAUSE OF ACTION**

17       In clear contrast to the first five claims in Alturas's Complaint, the Tribe's sixth and

18  seventh claims fail to constitute causes of action.  Claims one through five are grounded on

19  IGRA, and that federal statute's duty imposed upon states to negotiate in good faith.  25 U.S.C.

20  § 2710(d)(3-7).  If a federal court judicially determines that a state failed to negotiate in good

21  faith under IGRA, then the federal statute provides for a detailed remedial process.  25 U.S.C. §

22  2710(d)(7)(B).  This includes a process before a mediator and the possible issuance of procedures

23  by the Secretary of the United States Department of the Interior to govern a tribe's class III

24  gaming.  25 U.S.C. § 2710(d)(7)(B)(iii-vii).

25       In contrast to IGRA's statutorily imposed duty to negotiate in good faith that controls

26  Alturas's first five claims, the Tribe asserts state law causes of action under Section 12012.25 for

27  its sixth and seventh claims.  This state statute imposes no duty on the State to negotiate in good

28  faith.  Instead, Section 12012.25 provides the Governor discretionary authority to negotiate and

                                          2

1    execute compacts, and establishes a state-law compact-ratification process.  Cal. Gov't Code §

2    12012.25(a)-(d).  Specifically, in Section 12012.25(a) the California Legislature, by statute,

3    ratified fifty-seven tribal-state class III gaming compacts that the Governor negotiated and

4    executed in 1999, including Alturas's compact (1999 Compacts).  Cal. Gov't Code §

5    12012.25(a)(1)-(57).  Section 12012.25(b) established a ratification process for additional

6    compacts "identical in all material respects" to the 1999 Compacts and "executed after September

7    10, 1999 . . . ."  Cal. Gov't Code § 12012.25(b).  A compact is "hereby ratified" only if the

8    Governor certifies that the compact is "materially identical" to any of the 1999 Compacts, and the

9    compact is "not rejected by each house of the Legislature" by a supermajority.  Cal. Gov't Code §

10   12012.25(b)(1) & (2).  As explained below, while a plain and ordinary reading of Section

11   12012.25 shows that this statute defined state-ratification procedures, this section does not create

12   any state law requirement that the Governor negotiate a new compact materially identical to a

13   1999 Compact.  Nor does Section 12012.25 or California Government Code section 98005

14   (Section 98005) create a state-law duty to negotiate in good faith, which is already required under

15   IGRA.  As such, this Court should grant the State Defendants' Motion to Dismiss.

16        **A.    Under Section 12012.25's Plain and Ordinary Language, the Statute Does
               Not Provide Alturas With an Express or Standing Offer Compact**

17

18        The Tribe's Opposition and Motion misconstrues the plain reading of Section 12012.25(a)

19   and (b) by claiming that Section 12012.25(b) constitutes a legislative limitation on the Governor's

20   constitutional authority to negotiate compacts under IGRA.  Opp'n & Mot. at 11.  While Alturas

21   appears to recognize the Governor's authority under state law to negotiate compacts pursuant to

22   the California Supreme Court's decision in *United Auburn Indian Community. v. Newsom*, 10

23   Cal.5th 538 (2020) (*United Auburn*), the Tribe nonetheless claims that "when the Legislature

24   offered materially identical Tribal-State compacts to all Indian tribes through Section

25   12012.25(b), it denied the Governor authority to renegotiate the material terms of those

26   compacts."  Opp'n & Mot. at 11.  According to the Tribe's interpretation, "Section 12012.25(b)

27   imposes a legislative mandate on the Governor to negotiate no more than the non-material terms

28

3

1  of a 1999 Compact, and to execute that materially identical compact once non-material terms are

2  settled." *Id.* at 17.

3      Alturas's argument incorrectly implies that this case presents a constitutional dispute

4  between the Governor's state-authorized compacting power and the California Legislature's

5  alleged attempt to restrain the Governor's authority through the adoption of Section 12012.25(b).

6  However, interpreting Section 12012.25(b) according to its plain and ordinary language resolves

7  any such conflict.  Under its ordinary meaning, Section 12012.25(b) is not a legislative limitation

8  on the Governor's discretionary negotiation authority.  Instead, this statute provides a process for

9  ratification if, and only if, the Governor certifies that the executed compact is materially identical

10  to a 1999 Compact and the Legislature does not reject the compact.  Alturas mischaracterizes

11  Section 12012.25(b) as the California Legislature providing tribes with "a standing offer for a

12  materially identical compact . . . ."  Opp'n & Mot. at 19.  The statute provides no express offer by

13  the Legislature to enter into compacts that are "identical in all material respects" to the 1999

14  Compacts, but describes how such a compact could be ratified without further legislative action.

15  Cal. Gov't Code § 12012.25(b).

16      Alturas's expansive interpretation of Section 12012.25(b) is flawed because it ignores well-

17  settled rules for statutory construction.  Because the sixth and seventh claims are based upon

18  alleged violations of state law, California rules of statutory construction apply to interpreting

19  Section 12012.25.  *Ciganek v. Portfolio Recovery Assoc., LLC*, 190 F. Supp. 3d 908, 913-14

20  (N.D. Cal. 2016) (federal courts interpret "California statutes in accordance with California

21  principals of statutory construction").  Under California law, when interpreting statutory

22  language, words "should be given their ordinary and usual meaning and should be construed in

23  their statutory context."  *Catlin v. Superior Court*, 51 Cal. 4th 300, 304 (2011).  "If the plain,

24  commonsense meaning of the statute's words is unambiguous, the plain meaning controls."  *Id.*

25  "If there is no ambiguity or uncertainty in the language, the Legislature is presumed to have

26  meant what it said . . . ."  *People v. Skiles*, 51 Cal. 4th 1178, 1185 (2011), citing *People v.*

27  *Cochran*, 28 Cal.4th 396, 400-01 (2002).  Only if the meaning of the statutory language is unclear

28  do courts refer to the legislative history of the statute to ascertain legislative intent.  *Halbert's*

4

1   *Lumber, Inc. v. Lucky Stores, Inc.*, 6 Cal. App. 4th 1233, 1238-39 (1992).  If the statute's meaning

2   and purpose remain ambiguous, courts then "apply reason, practicality, and common sense to the

3   language at hand" to interpret the words such that they are "workable and reasonable,"

4   "practical," further "justice, and avoid an absurd result."  *Id.* at 1239 (citations omitted).

5          In applying these rules of statutory construction to Section 12012.25, it becomes clear that

6   the statute does not impose a duty on the Governor to negotiate and execute compacts materially

7   identical to the 1999 Compacts.  No language in Section 12012.25(b) provides tribes with any

8   form of "expressly offered" or "standing offer" compacts from the California Legislature.  Such

9   statutory language is wholly absent from Section 12012.25(b), which gives the Governor

10  discretion whether to certify a compact is materially identical to a 1999 Compact.  Therefore,

11  reading into Section 12012.25(b) a non-existent offer of an automatic compact defies the statute's

12  plain language.

13         In addition to Section 12012.25 lacking any plain or ordinary language offering an express

14  or automatic compact, Alturas's far-reaching interpretation of the statute defies its clear context.

15  Section 12012.25 primarily focuses on the state-law ratification process for compacts that are

16  negotiated and entered into under IGRA.  Specifically, subdivision (a) ratified fifty-seven

17  compacts that were negotiated in 1999, subdivision (b) established an alternate ratification

18  process for "materially identical" compacts, and subdivision (c) acknowledged the rights of tribes

19  to negotiate and enter into "materially different" compacts and set forth the ratification process

20  for the latter compacts.  Cal. Gov't Code § 12012.25(a)-(c).  Section 12012.25 effectively

21  provides three different paths for ratification of compacts and none of those paths require the

22  Governor to agree to or certify a compact as materially identical to those in subdivision (a).

23  Accordingly, the Tribe's interpretation of Section 12012.25(b) is simply not consistent with either

24  the statute's ordinary language or the context of subdivisions (a) through (c).

25

26

27

28

5

1

**B.    Under Section 12012.25's Plain and Ordinary Language, Alturas Did Not Demand a Materially Identical Compact**

2

3    Under the plain and ordinary rules of statutory construction, Alturas is incorrect that

4    Section 12012.25(b) provides tribes with a legislative right to an express or standing offer 1999

5    Compact.  But even if the Court accepted Alturas's flawed interpretation of Section 12012.25(b),

6    State Defendants' Motion to Dismiss should still be granted as to the sixth and seventh claims

7    because Alturas did not request a compact with materially identical terms to the 1999 Compact.

8    Significantly, Alturas concedes the material differences between its demand and the 1999

9    Compact by admitting that the Tribe "requested a new compact because its old compact is

10   expiring[,]" and that its demand was for a "new twenty-year compact . . . ."  Opp'n & Mot. at 21.

11   While the Tribe argues that its demand for another twenty-year compact was for a materially

12   identical compact under Section 12012.25(b), this argument is wrong because a new twenty-year

13   duration inserted into a second 1999 Compact would result in a compact not materially identical

14   to the 1999 Compact.

15   The duration of a class III gaming compact is an extremely important compact term for

16   both states and tribes.  These compacts are contractual agreements between state and tribal

17   governments that are binding on both sovereigns for the compact's duration.  Given their

18   importance, the Ninth Circuit has affirmed under IGRA that a state has the right to negotiate

19   durational term limits in class III gaming compacts, and that durational term limits are

20   permissible subjects for negotiation under IGRA.  *Chemehuevi Indian Tribe v. Newsom*, 919 F.3d

21   1148, 1154 (9th Cir. 2019) (*Chemehuevi*).  Alturas argues that the State "removed the Governor's

22   authority under State law to renegotiate the twenty year duration of compacts negotiated under

23   Section 12012.25(b)."  Opp'n & Mot. at 21.  But nothing in the plain and ordinary language of

24   Section 12012.25(b) supports this argument.

25   Moreover, far from limiting the Governor's discretionary negotiation authority, Section

26   12012.25(b) provides that this provision is applicable only "if the Governor certifies [the

27   compact] is materially identical at the time the Governor submits it to the Legislature."  Cal.

28   Gov't Code § 12012.25(b)(1).  Accordingly, this provision enhances, not limits, the Governor's

6

discretionary role in compact negotiations.  And without question, Alturas has not alleged—and cannot allege—that the State and the Tribe negotiated and entered into a new compact, and that the Governor certified this new compact as "materially identical" to the compacts ratified through Section 12012.25(a).

Alturas attempts to counter this outcome by claiming that some 1999 Compacts contain different effective dates, allegedly demonstrating that the California Legislature "understood that the effective dates were not material terms."  Opp'n & Mot. at 20.  Alturas further argues that some subsequent compacts were certified as materially identical under Section 12012.25(b) even though they included eighteen-month extension provisions that were not included in the 1999 Compacts.  *Id.*  But these arguments miss the mark.  Section 12012.25(b) does not provide tribes with a standing offer to obtain automatic twenty-year extensions of an existing 1999 Compact, or require the Governor to certify any compact as materially identical for purposes of that section.  The Governor maintains discretionary authority to certify whether a compact is materially identical under Section 12012.25(b), and to negotiate with tribes regarding compact terms and durational limits that suit the needs of both sovereigns.  Any alternative reading of Section 12012.25(b) would essentially permit tribes like Alturas to demand and receive automatic twenty-year extensions of their 1999 Compact in perpetuity, defeating the purpose of a twenty-year term limit.  That would constitute an erroneous construction of the language of Section 12012.25(b) that should be rejected by the Court.

## II. ALTURAS'S SUMMARY JUDGMENT MOTION ON THE SIXTH AND SEVENTH CLAIMS SHOULD BE DENIED

### A. Because the State Defendants Did Not Violate Sections 12012.25 and 98005, Alturas's Summary Judgment Motion Must Be Denied

Alturas states that its claim for summary judgment is based upon the State Defendants' alleged violation of Section 12012.25(b).  Opp'n & Mot. at 22.  According to the Tribe, "[t]he State failed to negotiate with Alturas in good faith because the Governor refused to engage in the negotiations that Section 12012.25(b) requires."  *Id.*  Alturas also briefly suggests that the Governor has a state law duty to negotiate in good faith under Section 98005.  *Id.* at 24.  Sections

12012.25 and 98005, however, do not create a state law cause of action requiring the Governor to negotiate in good faith.

Regarding Section 12012.25, the phrase "good faith" is not found in this statute.  This is in stark contrast to IGRA's specific statutory duty imposed on states to negotiate in good faith.  25 U.S.C. § 2710(d)(7)(B)(iii).  Nor does Section 12012.25 allow for any IGRA-style remedies under state law.  And even assuming Section 12012.25 provided such remedies, for to all of the reasons discussed in section I of this brief, the State Defendants never violated Section 12012.25.  Therefore, Alturas's request for summary judgment on its sixth and seventh claims must be denied.

Similar to Section 12012.25, Section 98005 also fails to create a state-based source for a duty to negotiate in good faith.  Based on its plain and ordinary language, Section 98005 is merely a waiver of State Defendants' ability to otherwise assert the defense of sovereign immunity for certain compact negotiation-related claims under IGRA in federal court.  Section 98005 is a jurisdictional provision that allows federal courts to hear such claims, but the statute does not create a state-law cause of action.  Consistent with this plain statutory reading, Alturas's Complaint did not plead Section 98005 as a separate cause of action.  Instead, the underlying pled causes of action are for violations of Section 12012.25 under state law and IGRA under federal law.  Accordingly, while Section 98005 waives the State Defendants' sovereign immunity to IGRA claims under federal law, the statute provides no independent basis for a "good faith" bargaining claim under state law.

**B.    Even if State Defendants Did Not Comply With Section 12012.25, Their Undisputed Conduct Does Not, by Itself, Constitute a Violation of IGRA's Duty to Negotiate in Good Faith**

As stated above, Sections 12012.25 and 98005 do not create a state law cause of action obligating State Defendants to negotiate in good faith pursuant to the standard established under IGRA.  Assuming the contrary, however, Alturas's summary judgment motion remains flawed because it mistakes the legal standard upon which federal courts determine an IGRA violation.  According to Alturas, "when the Governor attempts to negotiate outside the limits of Section 12012.25, the State *cannot* be acting in good faith."  Opp'n & Mot. at 23.  However, an alleged

8

1    state law violation is insufficient to establish a federal law violation of IGRA.  Instead, the well-

2    established legal principles developed by federal courts apply when adjudicating IGRA's good-

3    faith standard.

4        IGRA provides that any eligible Indian tribe "shall request the State . . . to enter into

5    negotiations for the purpose of entering into a Tribal-State compact . . . ."  25 U.S.C.

6    § 2710(d)(3)(A).  Under IGRA's good-faith standard, a state "shall negotiate with the Indian tribe

7    in good faith to enter into [a tribal-state] compact."  *Id*.  While IGRA requires "good faith"

8    negotiations, the statute does not expressly define this important term.  *In re Indian Gaming*

9    *Related Cases v. State of California,* 147 F. Supp. 2d 1011, 1020 (N.D. Cal. 2001) (*Coyote Valley*

10   *I*); *See* 25 U.S.C. § 2710(d)(3)(A).  In making this good-faith determination, the court "may take

11   into account the public interest, public safety, criminality, financial integrity, and adverse

12   economic impacts on existing gaming activities," and "shall consider any demand by the State for

13   direct taxation of the Indian tribe or of any Indian lands as evidence that the State has not

14   negotiated in good faith."  25 U.S.C. § 2710(d)(7)(B)(iii).

15       In adjudicating IGRA's good-faith standard in regard to the 1999 Compact, in the *Coyote*

16   *Valley* litigation both the district court and the Ninth Circuit discussed and rejected numerous

17   procedural and substantive complaints that the State failed to negotiate in good faith under IGRA.

18   *In re Indian Gaming Related Cases*, 331 F.3d 1094, 1107-17 (9th Cir. 2003) (*Coyote Valley II*);

19   *Coyote Valley I*, 147 F. Supp. 2d at 1021-22.  In doing so, the courts identified several relevant

20   factors to consider when determining, based on the record of negotiations filed by the parties,

21   whether a state negotiated in good faith.  These factors include whether the State remained

22   willing to meet with the tribe for further compact negotiations, whether the challenged provisions

23   resulted from negotiations or unilateral demands by the State, which party declined to engage in

24   further negotiations, and whether the provisions were categorically prohibited under IGRA.

25   *Coyote Valley II*, 331 F.3d at 1110-17; *Coyote Valley I*, 147 F. Supp. 2d at 1021-22.  The courts

26   found in the State's favor in adjudicating all of these good faith factors.

27       The Ninth Circuit in *Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 42 F.4th

28   1024 (9th Cir. 2022) (*Chicken Ranch*) further explored IGRA's statutory meaning of good faith.

9

1   By thoroughly reviewing the case's lengthy RON, the *Chicken Ranch* court examined the good-

2   faith standard in the context of whether the State's negotiation demands exceeded IGRA's scope

3   of permissible topic areas at 25 U.S.C. § 2710(d)(3)(C)(i)-(vii).

4         Following its review of the *entire* RON between the parties and IGRA's list of permissible

5   negotiation topics, the Ninth Circuit held in *Chicken Ranch* that "IGRA strictly limits the topics

6   that states may include in tribal-state Class III compacts to those directly related to the operation

7   of gaming activities." *Chicken Ranch*, 42 F.4th at 1029.  Further, *Chicken Ranch* found that the

8   State failed to engage in good-faith negotiations under IGRA by insisting on compact provisions

9   not directly related to the operation of class III gaming activities.  The Court held that under 25

10  U.S.C. §  2710(d)(3)(C)(vii), certain family, environmental, and tort law provisions sought by the

11  State were "not 'directly related to the operation of gaming activities.'" *Id.* at 1038.

12        *Chicken Ranch's* holding—with its federal law focus on IGRA's good-faith requirements—

13  shows that Alturas is incorrect in claiming that "[t]his case is no different from the bad faith that

14  arises from a state's violation of IGRA's compact violation rules."  Opp'n & Mot. at 22.  The so-

15  called "rules" violated by the State in *Chicken Ranch* were not, as Alturas suggests, violations of

16  state law.  In fact, in *Chicken Ranch* the State's negotiations violated IGRA because the topics

17  themselves exceeded the permissible scope of negotiations under 25 U.S.C. § 2710(d)(3)(C)(i)-

18  (vii).  *Chicken Ranch,* 42 F.4th at 1037-39.[1]

19        Here, Alturas's summary judgment motion alleges nothing more than a claimed violation of

20  state law under Section 12012.25(b).  But under both *Chicken Ranch* and *Coyote Valley II*, this is

21  not enough, by itself, to show that the State violated IGRA's duty to negotiate in good faith.  An

22  alleged violation of state law alone is insufficient to support court-ordered IGRA relief under 25

23  U.S.C. § 2710(d)(7)(B)(iii), which is a unique remedy for a federal law IGRA violation.

24

25  _____

      [1]  Alturas's citation to *Cheyenne River Sioux Tribe v. South Dakota*, 3 F.3d 273 (8th Cir.

26  1993) (*Cheyenne*) is similarly unpersuasive.  Opp'n & Mot. at 22.  In *Cheyenne*, the Eighth
    Circuit affirmed the district court's ruling under IGRA that the state was not required to negotiate

27  over bet limits "because bet limits are established by state law."  *Cheyenne*, 3 F.3d at 279.
    Contrary to Alturas's argument, this holding in *Cheyenne* does not support its claim that "a state's

28  violation of state law in compact negotiations is evidence of bad faith."  Opp'n & Mot. at 22.
    That issue was neither litigated before nor adjudicated by the Eighth Circuit in *Cheyenne*.

1    Accordingly, based upon the insufficient claims and facts raised in Alturas's motion, summary

2    judgment on its sixth and seventh claims should be denied.

3            **C.    Alturas's Summary Judgment Motion is Premature in the Absence of a
                     Filed Joint Record of Negotiations**

4

5            Another reason for denying Alturas's summary judgment motion is the Tribe's insistence

6    on filing this motion without a joint RON by both parties.  There is no dispute regarding this

7    case's early procedural stage.  Alturas served its Complaint on State Defendants less than six

8    months ago on September 19, 2022.  Because the State Defendants filed their Motion to Dismiss,

9    an answer has not yet been filed to Alturas's Complaint.  There has been no initial scheduling

10   conference before the Court and the parties have not yet filed their joint RON.

11           In IGRA cases, RONs are critically important to the proper adjudication of summary

12   judgment motions in establishing the underlying factual record.  It is well established that cases

13   that have analyzed a state's good faith are adjudicated on motions for summary judgment or

14   motions to dismiss based on the written record of negotiations.  *Rincon Band of Luiseno Mission*

15   *Indians v. Schwarzenegger*, 602 F.3d 1019, 1041 (9th.Cir. 2010) (good faith is "evaluated

16   objectively based on the record of negotiations").

17           For cases alleging bad-faith negotiations under IGRA, prior to summary judgment motions

18   the parties will jointly compile and file a complete RON.  Declaration of Noel A. Fischer in

19   Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment on Claims Six &

20   Seven at ¶ 2.  The RON typically consists of emails, correspondence, transcripts of negotiation

21   meetings, draft compacts, and any other records exchanged between the parties.  *Id*. at ¶ 3.  The

22   RON covers the time period that the parties are engaged in compact negotiations.  *Id*.  Joint RONs

23   were filed in previous cases litigated in the Eastern District of California alleging bad faith

24   negotiation under IGRA such as:  *Chicken Ranch Rancheria of Me-Wuk Indians et al. v. Newsom*,

25   No. 19-cv-00024-AWI-SKO, *Soboba Band of Luiseno Indians v. State of California*, No. 20-cv-

26   01147-AWI-SKO, *Bishop Paiute Tribe v. Newsom*, No. 20-cv-01318-AWI-SKO, *Bear River*

27   *Band of Rohnerville v. State of California*, No. 20-cv-01539-AWI-SKO, *Cachil Dehe Band of*

28   *Wintun Indians of the Colusa Indian Community v. State of California*, No. 20-cv-01585-AWI-

                                                     11

1    SKO, *Cahuilla Band of Indians v. State of California*, No. 20-cv-01630-AWI-SKO, and *Pit River*

2    *Tribe v. Newsom*, No. 20-cv-01918-AWI-SKO.  *Id*.  Based upon the factual record in the

3    complete RON, the Court can then make the good faith determination required by 25 U.S.C. §

4    2710(d)(7)(B)(iii).

5          Here, as a result of the premature summary judgment motion filed by Alturas, a RON has

6    not been jointly filed by the parties.  As a result, this Court cannot consider this case's entire

7    negotiation history when resolving Alturas's requested summary judgment motion.  An

8    examination of this complete history would show that Alturas's goals included actively

9    negotiating for a new class III gaming compact.[2]  A complete RON would also show that the

10    State Defendants were actively attempting to pursue compromise proposals to satisfy the Tribe's

11    demands, including responding to the then-recent *Chicken Ranch* decision, and that Alturas

12    terminated ongoing negotiations before compact negotiations could be concluded.  Like all other

13    courts that have recently considered IGRA summary judgment motions in California, this Court

14    should have the benefit of a complete RON before to ruling on any motion for summary judgment

15    under IGRA.  For this reason alone, Alturas's premature motion should be denied.

16        **D.**    **Even in the Absence of a RON, the Documents Submitted by Alturas in**
            **Support of Its Motion Include Disputed Facts That Prevent Summary**

17            **Judgment**

18          Summary judgment is appropriate only where the moving party demonstrates the absence

19    of a genuine material fact and entitlement to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

20    *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In this case, based on the very

21

22

---

23        [2]  The scope of Alturas's negotiation demands and disputes are partially shown in the
Tribe's July 28, 2022 letter to the State that was filed in support of its summary judgment motion.

24    Declaration of Darren P. Rose in Support of Plaintiff's Motion for Summary Judgment on Claims
Six & Seven, Ex. D.  This letter demonstrates that Alturas was not merely seeking a "new Tribal-
State compact with the same material terms as the Tribe's 1999 Compact for an additional 20

25    years."  *Id*. at 22.  Instead, this lengthy letter partially shows the scope of the compact
negotiations that were actively under discussion by the parties.  *Id*. at 2-23.  These negotiations

26    included, but were not limited to, changes to environmental provisions, *id*. at 9-10, changes to
provisions regarding alleged unlawful fees, *id*. at 10-12, complaints regarding food, beverage and

27    water quality provisions, *id*. at 12, provisions about intergovernmental agreements, *id*. at 12-13,
provisions regarding tort claims, *id*. at 13, concerns about alleged regulation of tribal employees,

28    *id*. at 14-17, and objections regarding tribal court operations, *id*. at 17-18.

12

1   limited documents provided by Alturas, there are disputed facts that preclude summary

2   adjudication of the Tribe's sixth and seventh claims.

3       Alturas alleges in its summary judgment motion that it clearly requested that the State enter

4   into a materially identical 1999 Compact under Section 12012.25, and that the Governor denied

5   that request, thereby refusing to negotiate in good faith under IGRA.  Opp'n & Mot. at 22.

6   Specifically, Exhibit D to the Declaration of Darren P. Rose in Support of Plaintiff's Motion for

7   Summary Judgment on Claims Six & Seven filed by Alturas shows that this request was made in

8   the context of broader and ongoing negotiations between the parties for a new class III gaming

9   compact.  Rose Decl., Ex. D, at 2-21.  Alturas's alternative request in this letter on July 28, 2022,

10  for a materially identical compact is located on page 22: "If the State elects to not extend

11  Alturas's 1999 Compact for another 20 years, then Alturas hereby requests that the Governor

12  execute a new Tribal-State compact with the same material terms as the Tribe's 1999 Compact

13  for an additional 20 years."  *Id.* at 22.

14      The State Defendants responded to this request in a letter dated August 12, 2022.  Rose

15  Decl., Ex. E.  This letter included the following statement: "The State is not able to accept the

16  Tribe's proposal to extend its 1999 compact or execute a materially identical compact *at this time*,

17  but plans to provide an updated draft compact to the Tribe after completing its evaluation to

18  facilitate negotiation of compact terms."  *Id.* at Ex. E, at 1 (emphasis added).

19      As evidenced by the above correspondence, Alturas's July 28, 2022, letter made multiple

20  demands.  These included a twenty-year extension to its existing 1999 Compact, revisions to the

21  1999 Compact, and an alleged materially identical compact.  *Id.* at Ex. D.  In response to these

22  multiple demands, the State did not flatly deny Alturas's request for either a compact extension or

23  an identical 1999 Compact.  Rose Decl., Ex. E.  Rather, the Governor's representative indicated a

24  commitment to continuing negotiations and providing a draft compact for discussion.  *Id.*

25      Based on this meager record, the State Defendants dispute several statements in Alturas's

26  statement of undisputed facts, including fact number 25.  This alleged fact states "[o]n August 12,

27  2022, the State informed Alturas that it was not able to execute a new Tribal-State compact that is

28  materially identical to the Tribe's 1999 Compact."  In fact, the August 12, 2022 letter advised that

13

the State would not agree to such a proposal "at this time . . . ."  Rose Decl., Ex. E.  The State's

reluctance was both appropriate and understandable given that the parties clearly remained in

substantive negotiations for a new compact.

Furthermore, in addition to the ongoing negotiations, there were numerous practical reasons

that prevented the State Defendants from immediately agreeing to Alturas's alternative request

for a materially identical compact.  First, terms in a new 1999 Compact would need to be updated

to conform with the Ninth Circuit's recent decision in *Chicken Ranch*.  Second, even prior to the

*Chicken Ranch* decision, the United States Department of Interior raised concerns with the

definitions of "Gaming Facility," and "Project" used in the 1999 Compacts, suggesting such a

compact would not be approved today.[3]  Third, if State agreed to a new 1999 Compact with

Aluras, the Tribe would avoid paying the State any regulatory costs under compact sections 5.1(a)

and 5.2(c) for the next twenty years.  Fourth, Alturas's 1999 Compact makes clear that the Tribe

did not operate a class III gaming establishment.  Rose Decl., Ex. A at 6.  As a result, any new

1999 Compact would need to include updated definitions, additional terms relevant to the present

conditions regarding the Tribe's current gaming establishment, and new material terms

responsive to the *Chicken Ranch* decision.  Accordingly, this factual dispute regarding the State

Defendants' response to Alturas's request for a materially identical compact cannot be resolved in

light of the minimal documents provided in support of Alturas's summary judgment motion.

Instead, resolution of this dispute should be reserved until it can be examined in the context of a

complete RON.

### E. Alturas's Summary Judgment Motion Should Be Denied Because the State Defendants Have Not Waived Sovereign Immunity for State Law Claims

Both Alturas's sixth and seventh causes of action allege a violation of Section 12012.25.

The sixth cause of action solely asserts a state law cause of action.  In the seventh cause of action

the Tribe claims that, based on the State's alleged violation of Section 12012.25, the State failed

---

[3] *See* Letter to The Honorable Claudia Gonzales, Chairwoman, Picayune Rancheria of Chukchansi Indians of California, from Bryan Newland, Assistant Secretary-Indian Affairs, dated Nov. 5, 2021, at 10. https://www.bia.gov/sites/default/files/dup/assets/as-ia/oig/pdf/508%20Compliant%202021.11.05%20Letter%20to%20Picayune%20Rancheria%20of%20Chukchansi%20Indians.pdf.

14

1   to negotiate in good faith under IGRA and the Tribe is entitled to enter into the IGRA remedial

2   process.  However, the Tribe's motion provides no authority showing that the State has waived its

3   sovereign immunity as to a state cause of action alleged under or based upon Section 12012.25 or

4   Section 98005.

5        Less than a year after Proposition 5's passage in California, in *Hotel Employees &*

6   *Restaurant Employees International Union v. Davis*, 21 Cal. 4th 585 (1999) (*Hotel Employees*),

7   the California Supreme Court heard a challenge to the constitutionality of Proposition 5.

8   Proposition 5 was a tribal-backed statutory initiative to legalize specific forms of class III gaming,

9   under IGRA, on tribal lands.  The California Supreme Court invalidated most of Proposition 5's

10  statutory scheme as unconstitutional, and the only language of Proposition 5 that survived

11  following the California Supreme Court's ruling was the last sentence of Section 98005.  *Id.* at

12  613-15.  This final sentence reads "[t]he State of California also submits to the jurisdiction of the

13  courts of the United States in any action brought against the state by any federally recognized

14  California Indian tribe asserting any cause of action arising from the state's refusal to enter into

15  negotiations with that tribe for the purpose of entering into a different Tribal-State compact

16  pursuant to IGRA or to conduct those negotiations in good faith, the state's refusal to enter into

17  negotiations concerning the amendment of a Tribal-State compact to which the state is a party, or

18  to negotiate in good faith concerning that amendment, or the state's violation of the terms of any

19  Tribal-State compact to which the state is or may become a party."  Cal. Gov't Code § 98005.

20  The court noted that this consent to suit "is obviously intended to restore to California tribes the

21  remedy provided in IGRA."  *Hotel Employees*, 21 Cal. 4th at 615.

22       Proposition 5 was not intended to, and did not, provide a waiver of the State's sovereign

23  immunity for a claim alleged under state law.  Following *Hotel Employees*, pursuant to the

24  surviving last sentence in Section 98005, Alturas retains a federal remedy under IGRA for a

25  violation of IGRA only in federal court.  As such, the State has waived its defense of sovereign

26  immunity only to the first five IGRA claims based on federal law in Alturas's Complaint.

27  Because the Tribe's sixth and seventh causes of action arise under state law, the State maintains

28

1    its sovereign immunity defense for those two claims, and this Court lacks jurisdiction to grant

2    summary judgment for the Tribe on the basis of the sixth and seventh claims.

3                                    **CONCLUSION**

4           For all the forgoing reasons, the State Defendants request this Court to grant their motion to

5    dismiss the sixth and seventh claims in Alturas's Complaint, and deny the Tribe's summary

6    judgment motion on these claims.

7

8    Dated:  February 24, 2023                    Respectfully submitted,

9                                                  ROB BONTA
                                                   Attorney General of California
10                                                 SARA J. DRAKE
                                                   Senior Assistant Attorney General
11                                                 T. MICHELLE LAIRD
                                                   Supervising Deputy Attorney General
12                                                 TIMOTHY M. MUSCAT
                                                   Deputy Attorney General
13

14                                                 */s/ B. Jane Crue*

15

16                                                 B. JANE CRUE
                                                   Deputy Attorney General
17                                                 *Attorneys for State Defendants*

18

19

20

21

22

23

24

25

26

27

28

16

# CERTIFICATE OF SERVICE

Case Name:   **Alturas Indian Reservation v.**          No.   **2:22-cv-01486-KJM-DMC**
     **Gavin Newsom, et al.**

I hereby certify that on February 24, 2023, I caused to be electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**STATE DEFENDANTS' COMBINED REPLY TO PLAINTIFF'S OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT'S SIXTH AND SEVENTH CLAIMS FOR RELIEF AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS SIX AND SEVEN**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on February 24, 2023, at Sacramento, California.

Linda Thorpe                                        /s/ Linda Thorpe
Declarant                                                   Signature

17