John M. Peebles (Cal. Bar No. 237582)
Patrick R. Bergin (Cal. Bar No. 269672)
Michael A. Robinson (Cal. Bar No. 214666)
Tim Hennessy (Cal. Bar No. 233595)
Steven J. Bloxham (Cal. Bar No. 96384)
Curtis Vandermolen (Cal. Bar No. 338366)
PEEBLES KIDDER BERGIN & ROBINSON LLP
2020 L Street, Suite 250
Sacramento, California 95811
Telephone: (916) 441-2700
Fax: (916) 441-2067
Email: jpeebles@ndnlaw.com

*Attorneys for Plaintiff*
ALTURAS INDIAN RANCHERIA

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALTURAS INDIAN RANCHERIA, a federally recognized Indian tribe,<br><br>Plaintiff,<br><br>vs.<br><br>GAVIN NEWSOM, Governor of the State of California; and the STATE OF CALIFORNIA,<br><br>Defendant. | Case No.: 2:22-cv-01486-KJM-DMC<br><br>**PLAINTIFF'S REPLY TO STATE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS SIX AND SEVEN.**<br><br>Date: January 27, 2023<br>Time: 10:00 a.m.<br>Dept: Courtroom 3<br>Judge: Hon. Kimberly L. Mueller<br>Action filed: August 22, 2022 |

PLAINTIFF'S REPLY TO STATE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS SIX AND SEVEN.

1

**I.       The State's "Plain Reading" Imports Words that are Simply Not in the Statute.**

Under Government Code section 12012.25,[1] the Governor cannot refuse to negotiate and execute a Tribal-State compact that is materially identical to a 1999 Compact after Alturas requests it. Alturas' previous brief demonstrated that this conclusion follows from a systematic evaluation of the legislature's powers in relation to the Governor's, the words of the statute, and the historical context in which the statute was adopted. P's Combined Brief in Opp. to D's Mot. to Dismiss Claims Six & Seven and in Supp. of P's Mot. for Summary Judgment on Claims Six & Seven ("MSJ") at 7-18. In response, the State never addressed whether its legislature limited the Governor's authority to negotiate Tribal-State compacts under section 12012.25 and ignored the historical context.

Rather, the State responded by declaring that the Governor has unrestricted discretionary authority to negotiate all terms of a Tribal-State compact under "a plain and ordinary reading of Section 12012.25." D's Combined Reply to P's Opp. to D's Mtn. to Dismiss the Complaint's Sixth and Seventh Claims for Relief and Opp. to P's Mtn. for Summary Judgment on Claims Six and Seven ("Opp. Brief") at 3:10-11. Alturas agrees that the analysis must start with a plain and ordinary reading of the statute. The State's interpretation, however, adds words that simply are not there.

The State repeats that section 12012.25(b) applies "**only if** the Governor certifies that the compact is 'materially identical'…." Opp. Brief at 3:7-8 (emphasis added), 4:8-10 ("if, and only if"), 6:25-27. But the State obscures the actual language of the statute. A Tribal-State compact executed after September 10, 1999, "is hereby ratified if both of the following are true:

> (1) The compact is identical in all material respects to any of the compacts expressly ratified pursuant to subdivision (a). A compact shall be deemed to be materially identified [*sic*] to a compact ratified pursuant to subdivision (a) if the Governor certifies it is materially identical at the time the Governor submits it to the Legislature.
>
> (2) The compact is not rejected by each house of the Legislature, two-thirds of the membership thereof concurring, within 30 days of the date of the submission of the compact to the Legislature by the Governor… [provisions for recess]."

---

[1] Except as otherwise provided, section references in this Reply are to the Government Code.

PLAINTIFF'S REPLY TO STATE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS SIX AND SEVEN.

2

Section 12012.25(b).[2]  The words "only if" are nowhere in the statute.  Nor does the statute imply the words "only if."

The Governor's certification provision is a separate sentence from the statutory requirement that the compact be identical in all material respects to any of the 1999 Compacts.  It does not naturally flow from the precursor "if both of the following are true" and it is not divided into a separate paragraph to which that clause refers.  Rather, the Governor's certification operates as a limit on the legislature's determination of whether the compact is materially identical under section 12012.25(b)(1), sentence 1.  The Governor may, at the risk of his reputation, offer such certification to the legislature.  If so, the legislature must accept his certification as true ("deemed to be").  Otherwise, the legislature makes its own determination whether the compact is materially identical.  *See* MSJ at 17.

Indeed, the legislature could have provided under (1) that the compact is ratified "**only if** the Governor certifies that it is materially identical."  That is not what the statute says, and the State's textual interpretation would abrogate legislative power in favor of the Governor.  *See* MSJ § (II)(a).

A plain reading of the statute places the Governor's discretion not on whether to submit a Tribal-State compact to the legislature under section 12012.25(b), but instead on whether the Governor certifies that his submission is materially identical.  The State's attempt to insert the words "only if" into the statute completely changes its meaning and is not consistent with the words of the statute.  The Governor <u>must</u> submit a materially identical compact to the legislature and <u>may</u> certify that the compact is identical.  *See also* MSJ §§ (II)(b) & (f).

**II.     Section 12012.25(b) Does Not Create an "Automatic Compact."**

The State falsely claims that under Alturas' careful analysis of section 12012.25, the State offered an "automatic compact."  Opp. Brief at 5:10-12, 5:13014, 7:10-12, 7:15-18.  The Governor's doomsday scenario is found nowhere in Alturas' MSJ and cannot arise from its analysis of the statute.  Simply because the legislature denied the Governor unfettered authority

---

[2] Alturas notes that the statute refers to "any of the [1999] compacts" and does not limit Alturas to the identical terms of its own 1999 Compact, as the State suggests.  Opp. Brief at 6:8-10, 7:10-11, 7:15-18.

PLAINTIFF'S REPLY TO STATE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS SIX AND SEVEN.

3

over gaming compacts does not mean there are no policy safeguards.  *See also* MSJ at 13:26-28, 17:16-18:3.

The legislature is the gatekeeper for State policy, not the Governor.  The legislature's policy safeguards operate in two ways.  First, the legislature may act by a simple majority to revise section 12012.25—including to remove subdivision (b)—at any time.  Thus, the "automatic extension" bemoaned by the State is only automatic as long as the legislature intends it to be.

Second, and absolutely contrary to the State's claim, section 12012.25(b)(2) enables the legislature to disapprove each and every compact submitted under that section within 30 days.  It could not be stated more simply.  The Governor submits the compact to both houses of the legislature, and the State's elected representatives have 30 days to review the compact and disapprove it.  Period.  No automatic compacts.

### III.     The State Fails to Establish that there is a Genuine Dispute of Material Fact.

There is no dispute of material fact about whether the State denied Alturas' request for a Tribal-State compact under section 12012.25, despite the State's effort to conjure a dispute.  Opp. Brief at II(D).[3]

The State attempts to distinguish a "no" answer from a "no, but maybe later" answer.  In effect, they are the same.  Ultimately, the State's argument is that it said "maybe later" (or, in the State's parlance, "not at this time"), because it wanted to negotiate compact provisions that are not materially identical to those in a 1999 Compact.  Opp. Brief at II(D) and 12, n. 2.  So, the State's response was "no," the Governor won't negotiate a materially identical compact under section 12012.25(b), but the Governor will negotiate a materially different compact under section 12012.25(c).

---

[3] The State complains that the parties have not agreed upon a complete Joint Record of Negotiations spanning a period of years.  Opp. Brief at II(C).  The State does not explain why such a voluminous record is necessary for this Court to decide the discrete issue presented in this motion, which rests on an undisputed fraction of that negotiation record and is primarily an interpretation of law.  Moreover, the State could have introduced facts contained in that record if it believed any of them were material, but did not do so.

PLAINTIFF'S REPLY TO STATE'S OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT ON CLAIMS SIX AND SEVEN.
4

Alturas submits, then, that the State does not dispute the two material facts in this motion for summary judgment: (1) Alturas requested negotiations under section 12012.25(b), and (2) the State refused Alturas' request. MSJ at 7:7-10. It is not relevant to those facts that the State was negotiating other non-identical terms with Alturas—Alturas concluded those negotiations with an alternative request under section 12012.25(b), because an agreement on a non-identical compact was highly unlikely. MSJ at 7:17-19; *see also Chicken Ranch*, 42 F.4th 1024, wherein the Ninth Circuit found the State was demanding provisions not permitted by IGRA, and Alturas' Claims 1 through 5. Notably, the State does not dispute that it is Alturas' choice as to which type of compact it wanted—materially identical, or materially different. MSJ at 18-19.

Further, the State admits that it denied Alturas' request under section 12012.25(b) in order "to provide an updated draft compact" which was to include materially different terms. Opp. Brief at 13:15-18, 14:4-16. The State's "practical reasons" for denying Alturas' request under section 12012.25(b) were because it wanted to change the compact terms to "update" the compact. Opp. Brief at 14:6-7 ("a new 1999 Compact would need to be updated"). The State's assertion that it wanted to ensure the compact would conform to decisions by the Department of the Interior and the Ninth Circuit is disingenuous, and none of its "practical reasons" allow the Governor to deny Alturas' request. Opp. Brief at 14:6-7, 14:7-10.

Once again, the Governor oversteps his authority. The legislature approved the form and contents of a materially identical Tribal-State compact under sections 12012.25(a)-(b), and the Department of the Interior affirmatively approved the same form and contents. 65 Fed. Reg. 31189 (May 16, 2000). Yet, the Governor purports to be the ultimate authority on whether the contents of those legislatively and federally approved compacts continue to be useful. The Governor cannot validly refuse a request for a materially identical compact out of a desire to unilaterally override legislative policymaking and federal decisions.

### IV. The State Cannot Assert Sovereign Immunity as a Defense.

The State argues that it has not waived sovereign immunity for state law claims. Opp. Brief at (E). The State's argument is both irrelevant and incorrect. First, Alturas' claims are brought under the Indian Gaming Regulatory Act ("IGRA")—that the State did not negotiate in good

PLAINTIFF'S REPLY TO STATE'S OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT ON CLAIMS SIX AND SEVEN.
5

faith—and Alturas' request that the Court determine whether the Governor violated section 12012.25 as a matter of law is simply incident to that federal claim. Complaint ¶¶ 216-224 ("The State's refusal to enter into a Tribal-State compact as required by State law is a failure to negotiate in good faith in violation of IGRA."). Second, even if the Court views Alturas' request as a state law claim for declaratory judgment, the State has waived its sovereign immunity.

### a. Alturas requested an interpretation of state law incident to a decision that the State failed to negotiate in good faith as required by IGRA.

Congress authorized Indian tribes to sue states when they violate IGRA by refusing to negotiate, or refusing to negotiate in good faith. 25 U.S.C. § 2710(d)(7)(B). The Court's determination whether the State refused to negotiate in good faith necessarily involves various interpretations of state law. IGRA is, after all, intended to foster cooperation between federal, state, and tribal governments.

For example, federal courts commonly interpret state law in the context of whether the state "permits such gaming for any purpose by any person, organization, or entity." 25 U.S.C. § 2710(d)(1)(B). If not, then the State is not required to negotiate with the Indian tribe for the gaming activity. *See*, *e.g.*, *Rumsey Indian Rancheria of Wintun Indians v. Wilson*, 64 F.3d 1250, 1258 (9th Cir. 1994). No court has ever held that such federal court interpretations of state law are state law causes of action protected by the state's sovereign immunity. To do so would sharply undermine the remedial provisions of IGRA, substantially hinder the Court's ability to decide IGRA claims, and potentially negate the State's waiver of sovereign immunity for compact negotiation-related claims at section 98005.

The Court's interpretation of section 12012.25 is no different than federal interpretation of other state laws pertaining to the conduct of gaming in IGRA cases. Just as, in *Rumsey*, a declaration of the rights of the parties related to the operation of keno was not a state law claim, but merely an interpretation of state law, so too is a declaration of the rights of the parties, related to whether the State created a standing offer of a standardized Tribal-State compact, merely an interpretation of what the law is. *Id*. (citing *Cheyenne River Sioux Tribe v. South Dakota*, 3 F.3d 273 (8th Cir. 1993)). Therefore, the cause of action is Alturas' claim that the State refused to

PLAINTIFF'S REPLY TO STATE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS SIX AND SEVEN.

6

negotiate or refused to negotiate in good faith under IGRA (see Claim for Relief #7), and the underlying law which the Court must interpret is section 12012.25 (see Claim for Relief #6).

This premise is also similar to the U.S. Supreme Court's decision in *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987). There, the court was called upon to decide what was the "public policy of California." *Id*. at 213. The court held that the State's public policy "regulates rather than prohibits gambling in general…" following an examination of State gambling statutes. *Id*. at 211. The court never suggested that its declaration of the policy of California somehow arose from a state law cause of action.

Neither should this Court conclude that its examination of state law—section 12012.25—is anything but a determination of the contours of the State's duty to negotiate Tribal-State compacts in good faith. Just as the Supreme Court in *Cabazon* evaluated state law to determine whether the State's conduct interfered with the tribes' federally protected rights, and the Ninth Circuit in *Rumsey* evaluated state law to determine whether the State failed to negotiate in good faith, here the Court may evaluate state law to determine whether the State failed to negotiate, or failed to negotiate in good faith. Upon deciding that section 12012.25(b) requires the Governor to submit a materially identical compact to the legislature for its review, the Court should decide that the Governor's violation of the statute constitutes a failure to negotiate a Tribal-State compact, or a failure to negotiate a compact in good faith under IGRA.

### b. The State waived its sovereign immunity for federal declaratory judgments arising from its IGRA compact negotiations.

Even if the Court decides that its interpretation of section 12012.25, as to whether the State failed to comply with State law, is a "cause of action" (as the State claims) for declaratory judgment, such a declaratory judgment action need not arise under State law, and the State waived its sovereign immunity. Alturas properly pleaded (1) "this action arises under… the Declaratory Judgments Act, 28 U.S.C. §§ 2201-2202," and (2) "the State has waived its sovereign immunity from suit…" by enacting Government Code section 98005. Complaint ¶¶ 3 & 6.

Under the federal Declaratory Judgments Act ("Act"), this Court "may declare the rights and other legal relations of any interested party seeking such declaration…." 28 U.S.C. § 2201. The

Act applies to any "case of actual controversy within [the federal court's] jurisdiction." *Id*. It does not provide a standalone cause of action, but "'presupposes the existence of a judicially remediable right.'" *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)). Here, there is a case of actual controversy over the State's failure to negotiate or failure to negotiate in good faith as required by IGRA. The Court has jurisdiction over this case, and it therefore has jurisdiction to issue a declaration of Alturas' rights and the State's obligations under the Act. As the State admits, it waived its sovereign immunity in relation to "IGRA claims based on federal law." Opp. Brief at 15:25-26.

Further, there is no question the State's waiver of sovereign immunity encompasses declaratory relief. Section 98005 is a broad waiver of the State's sovereign immunity with respect to the State's conduct in gaming compact negotiations. The waiver applies to "**any cause of action arising from** the state's refusal to enter into negotiations… or to conduct those negotiations in good faith…" (emphasis added). The California Supreme Court held that a State waiver of sovereign immunity allows a party to sue the State for a declaratory judgment. *Hoyt v. Board of Civil Service Commrs.*, 21 Cal.2d 399, 402 (1942); *see also Wells v. One2One Learning Foundation*, 39 Cal.4th 1164, 1192 (2006). *Hoyt* explained:

> If an acceptance of liability and subjection to suit on the part of a sovereign body is found elsewhere in the statutes of the state and the declaratory judgment procedure is not barred by the provisions of the waiver of immunity, we think it clear that a determination of the legal issue in an action for declaratory relief in no way constitutes an impairment of governmental sovereignty.

*Hoyt* at 403. The *Hoyt* decision described exactly the situation before the Court here. The State is subject to suit for "any cause of action" arising from its compact negotiations, and the waiver of immunity in section 98005 does not bar application of any declaratory judgment procedure. Therefore, determining the legal issue of whether the State violated section 12012.25 "in no way constitutes an impairment of governmental sovereignty." *Id*.

### c. The State is also subject to its own declaratory judgment statute.

Going even further, the State's broad waiver in section 98005 also waived its sovereign immunity for compact negotiation-related declaratory judgments under State law causes of action. More specifically, Alturas could seek declaratory judgment under the State's declaratory judgment statutes, Code of Civ. Proc. § 1060, for which section 98005 operates to waive the State's sovereign immunity.

The only reference to federal law or IGRA in section 98005 is that the subject of the negotiations must be a "Tribal-State compact pursuant to IGRA" or an amendment to such a compact. With respect to the negotiation of IGRA compacts, the waiver applies to "any cause of action." The word "any" means exactly that—state or federal, and includes declaratory relief under state law as well as federal.[4]

### d. The Court's subject matter jurisdiction under IGRA is not enlarged by declaring the rights and obligations of the parties under section 12012.25.

Finally, declaratory judgments are "are not intended in any way to enlarge the jurisdiction of courts over parties and subject-matter." *Hoyt*, 21 Cal.2d at 403. Yet the State appears to believe that Alturas' request for a declaration that the Governor violated section 12012.25, and <u>therefore did not negotiate in good faith</u>, is beyond the court's jurisdiction under IGRA. It is not.

The State has a duty under federal law to negotiate in good faith. The Court's evaluation of the State's good faith in an IGRA claim is far reaching. The Court may examine, *inter alia*, the State's gambling laws, the State's conduct during negotiations, the details of the State's compact proposals, and the good faith factors at 25 U.S.C. § 2710(d)(7)(B)(iii)(I)—"the public interest, public safety, criminality, financial integrity, and adverse economic impacts on existing gaming activities." Both federal law, under IGRA, and state law, at sections 12012.25 and 98005, impose duties on the State to negotiate in good faith with Alturas. Federal law provides a remedy, at 25 U.S.C. § 2710(d)(7), and State law commits the State to that remedy, at section 98005, if it fails

---

[4] Alturas notes that section 98005 may require resolution of some state law claims in federal court. This forum selection clause does not affect the extent of the waiver, it merely acknowledges that the primary IGRA claims are federal claims brought in federal court, which may exercise supplemental jurisdiction over such state law claims. 28 U.S.C. § 1367.

PLAINTIFF'S REPLY TO STATE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS SIX AND SEVEN.

9

its duty. It is well within the jurisdiction of this Court to decide whether the State negotiated in good faith in light of the Governor's obligation under section 12012.25, and the State cannot avoid the Court's jurisdiction by asserting sovereign immunity.

### V. The Governor's Violation of Section 12012.25 Constitutes a Failure to Negotiate in Good Faith under IGRA.

The State baselessly claims that the Governor can violate the State's compact-negotiation scheme under section 12012.25, and not have violated IGRA's duty to negotiate in good faith. Opp. Brief at 10:20-23. Contrary to the State's assertion, *Chicken Ranch*, *Coyote Valley II*, and all other IGRA cases evaluate whether the State's conduct during negotiations violated its duty to negotiate in good faith. Some violations of IGRA, such as negotiations outside of the permissible subjects, and refusals to negotiate, are essentially *per se* bad faith. *Chicken Ranch*, 42 F.4th 1024; *North Fork Rancheria of Mono Indians of California v. California*, 1:15-cv-00419-AWI-SAB, 2015 WL 11438206, *8 (E.D. Cal. 2015) (the State's "response to North Fork's requests for negotiations can only be reasonably interpreted as a denial of that request. On that basis, the Court must order the parties to reach an agreement within 60 days pursuant to § 2710(d)(7)(B)(iii)").

Though IGRA does not define "good faith," the term is understood to include "faithfulness to one's duty or obligation." Black's Law Dictionary (11th ed. 2019). Here, section 12012.25 imposes a "duty or obligation" on the Governor, and his breach of that duty is evidence of a lack of good faith in negotiating a Tribal-State compact. The Court's evaluation of the State's good faith is objective, and is often based on interpretation of state law. *See* 25 U.S.C. § 2710(d)(1)(B); *see, e.g.*, *Rumsey*, *supra*. The State does not effectively refute that the Governor's violation of state law prescribing methods for negotiating a Tribal-State compact under IGRA also violates the State's duty to negotiate in good faith. *See* MTD § V. Instead, the State claims that a "violation of state law *alone* is insufficient to support court-ordered IGRA relief…." Opp. Brief at 10:21-23 (emphasis added). Assuming that were true, it does not address Alturas' claim that the Governor's violation of section 12012.25 was a refusal to negotiate, or not good faith negotiations. The claim does not stand alone—it is wholly within the context of the State's duty to negotiate in good faith under IGRA. *See* Claim Seven. The premise is simple: The State offered Alturas a materially

identical Tribal-State compact, and the Governor reneged on that offer in violation of state law. Such conduct is not good faith negotiation.

## CONCLUSION

Ultimately, the State fails to dispute the material facts in this Motion for Summary Judgment and fails to refute Alturas' careful analysis of section 12012.25(b). The legislature offered Alturas—and all Indian tribes—a Tribal-State compact that is materially identical to any of the compacts ratified in section 12012.25(a). Alturas requested a materially identical compact under section 12012.25(b). The Governor denied Alturas' request under section 12012.25(b), in violation of that statute. This was a failure to negotiate Alturas' compact in good faith. Therefore, the Court should grant Alturas' summary judgment on claims 6 and 7 and deny the State's motion to dismiss those claims.

Respectfully submitted,

Dated: March 10, 2023

John M. Peebles
Patrick R. Bergin
Michael A. Robinson
Tim Hennessy
Steven J. Bloxham
Curtis Vandermolen
PEEBLES KIDDER BERGIN & ROBINSON LLP
2020 L Street, Suite 250
Sacramento, California 95811
Telephone: (916) 441-2700
Fax: (916) 441-2067
Email: jpeebles@ndnlaw.com

By: /s/ John M. Peebles
       John M. Peebles
       Attorneys for Plaintiff

Re: *Alturas Indian Rancheria v. Gavin Newsom, et al.*
Case No. 2:22-CV-01486-KJM-DMC

**CERTIFICATE OF SERVICE**

I am employed in the County of Sacrameto, California. I am over the age of 18 years and not a party to the above-entitled action. My business address is 2020 L Street, Suite 250, Sacramento, CA 95811.

On the date indicated below, I caused to be electronically filed the following document(s) with the Clerk of the Court by using the CM/ECF system:

**PLAINTIFF'S REPLY TO STATE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS SIX AND SEVEN**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on 3/10/2023, in Sacramento County, California

| Zoraya Lawson | */s/ Zoraya Lawson* |
|---|---|
| Declarant | Signature |