UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Alturas Indian Rancheria,<br><br>    Plaintiff,<br><br>    v.<br><br>Gavin Newsom and the State of California,<br><br>    Defendants. | No. 2:22-cv-01486-KJM-DMC<br><br>ORDER |

Plaintiff Alturas Indian Rancheria brings this action against defendants Gavin Newsom and the State of California, challenging defendants' negotiating position with respect to a new tribal-state compact. Alturas claims defendants did not negotiate the compact in good faith as required by the federal Indian Gaming Regulatory Act (IGRA) and did not offer a materially identical compact as required by state law. Defendants move to dismiss Alturas's state law claims, arguing those claims misconstrue the relevant state law and have no legal basis. In response, Alturas moves for summary judgment on the state law claims. Those state law claims present a matter of first impression. Because Alturas cannot state a claim under the relevant state law, the court **grants** defendants' motion and **dismisses with prejudice** Alturas's sixth and seventh claims. As a result, the court also **denies as moot** Alturas's cross-motion for summary judgment on those claims.

I. **BACKGROUND**

Alturas is a federally recognized Indian tribe. Compl. ¶ 8, ECF No. 1. In September 1999, Alturas, along with fifty-six other California Indian tribes, concluded tribal-state compacts for gaming. *Id.* ¶ 50. After twenty years, the compacts expired, and Alturas contacted the Governor to negotiate a new gaming compact. *Id.* ¶ 114. This lawsuit addresses the Governor's conduct on behalf of California during those negotiations.

There are two parts to the lawsuit. The first addresses IGRA. Before the adoption of IGRA, states did not have civil regulatory authority over tribal gaming activities in Indian country. *Id.* ¶ 22. IGRA allows states to play a role in regulating gaming through negotiation of tribal-state compacts. *Id.* It also places restrictions on the state's role. For example, it sets standards to preserve tribal control over gaming activities, limits states' authority to tax tribal gaming activities and obligates states to negotiate tribal-state compacts in good faith. *Id.* Alturas argues defendants did not negotiate in good faith, stating five claims for relief under IGRA. *Id.* ¶¶ 181–215.

The second part invokes California Government Code section 12012.25. Alturas alleges defendants violated section 12012.25 because they did not execute a materially identical tribal-state compact. *Id.* ¶¶ 216–220. Alturas also claims this state law violation comprises a failure to negotiate in good faith under IGRA. *Id.* ¶¶ 221–224.

Defendants concede Alturas's first five claims allege sufficient facts to support cognizable claims under IGRA. Mot. at 7, ECF No. 20-1. However, they argue Alturas's sixth and seventh claims are predicated on a misinterpretation of section 12012.25. *Id.* at 7–8. Defendants contend this state law only provides a ratification process, *id.* at 7, whereas Alturas's sixth and seventh claims presume the state law requires the Governor to submit a materially identical compact to the Legislature, *see, e.g.*, Compl. ¶ 217. Defendants move to dismiss the sixth and seventh claims on this basis, *see generally* Mot., while Alturas moves for summary judgment on those claims, *see* Opp'n & Mot. Summ. J., ECF No. 25.

/////

The parties' competing motions turn on statutory interpretation. Does section 12012.25(b) effectively offer tribes a materially identical compact for ratification, as Alturas contends, or does it only provide a ratification process, as defendants claim? Nestled within this question of statutory interpretation is a dispute about the state Constitution because the Governor has the constitutional authority to negotiate and conclude tribal-state compacts subject to ratification by the Legislature. *See* Cal. Const., art. IV, § 19(f). As a result, Alturas's interpretation of section 12012.25(b), restricting the Governor's discretion to negotiate and execute compacts, would need to be squared with the state Constitution for Alturas to prevail.

The motions are fully briefed. *See* Mot.; Opp'n & Mot. Summ. J.; Reply & Opp'n, ECF No. 31; Reply, ECF No. 32. The court held oral argument on the motions on March 30, 2023. Curtis Vandermolen appeared for Alturas, and Timothy Muscat represented defendants. Hr'g Mins. (Mar. 30, 2023), ECF No. 35.

## II.  LEGAL STANDARD FOR MOTION TO DISMISS

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss, the court assumes all factual allegations are true, construing "them in the light most favorable to the nonmoving party." *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (mark and citation omitted). The motion may be granted if the complaint's factual allegations do not support a "cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). To survive a motion to dismiss, a complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But formulaic recitations of elements are inadequate. *Id.* "Sufficient factual matter" must state a claim to relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.  ANALYSIS

The threshold question raised by the parties' motions is whether section 12012.25(b) effectively offers tribes either a new compact or a renewal of their existing compact, subject only to rejection by a two-thirds vote of the Legislature. *See* Cal. Gov't Code § 12012.25(b)(2). The

3

1  court begins with this threshold question. Finding the answer dispositive and requiring dismissal,
2  the court then addresses whether leave to amend is appropriate.

3        A.      **Alturas's Section 12012.25 Claims**

4  Alturas's sixth and seventh claims turn on whether section 12012.25(b) creates a state law
5  right for tribes. Alturas claims it does, and defendants insist it does not. As explained below, the
6  court finds section 12012.25(b) does not create any such right and thus Alturas cannot proceed on
7  the sixth and seventh claims.

8  The parties have identified no case interpreting California Government Code
9  section 12012.25, and having reviewed cases citing the statute, the court has not located one
10  either. As noted, the question before this court raises a matter of first impression. In analyzing
11  section 12012.25, the court follows California rules of statutory interpretation. *In re Reaves*,
12  285 F.3d 1152, 1156 (9th Cir. 2002).

13  "When [California courts] interpret statutes, [they] usually begin by considering the
14  ordinary and usual meaning of the law's terms, viewing them in their context within the statute."
15  *In re Friend*, 11 Cal. 5th 720, 730 (2021). "If the plain, commonsense meaning of a statute's
16  words is unambiguous, the plain meaning controls." *Holland v. Assessment App. Bd. No. 1*,
17  58 Cal. 4th 482, 490 (2014) (quoting *Fitch v. Selects Prods. Co.*, 36 Cal. 4th 812, 818 (2005)).
18  "If, however, the statutory language may reasonably be given more than one interpretation, courts
19  may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied,
20  the legislative history, public policy, and the statutory scheme encompassing the statute." *People*
21  *v. Cornett*, 53 Cal. 4th 1261, 1265 (2012) (citation and marks omitted). Pragmatism guides this
22  analysis. "[I]t is a settled principle of statutory interpretation that language of a statute should not
23  be given a literal meaning if doing so would result in absurd consequences which the Legislature
24  did not intend." *Holland*, 58 Cal. 4th at 490 (quoting *Horwich v. Super. Ct.*, 21 Cal. 4th 272, 276
25  (1999)).

26  Here, the statutory text is unambiguous. Section 12012.25(a) ratifies 57 tribal-state
27  gaming compacts. Section 12012.25(b) declares "[a]ny other tribal-state gaming compact entered
28  into between the State of California and a federally recognized Indian tribe which is executed

after September 10, 1999, is hereby ratified if both of the following are true[.]" The compact must be materially identical to those in subdivision (a) and not rejected by the Legislature. Cal. Gov't Code §§ 12012.25(b)(1), (2). In short, on its face, this is a ratification statute. The statute's plain language ratifies any compacts that are materially identical to those enumerated in subdivision (a), which have been entered into between the state and a tribe, so long as the Legislature does not expressly reject them. It does not guarantee a materially identical compact to any tribe that wants one, as Alturas would have this court conclude. California courts do "not speculate that the Legislature meant something other than what it said and [they do not] rewrite a statute to posit an unexpressed intent." *Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 356 (2022) (cleaned up).

The statute's unambiguous meaning is confirmed by its structure and other provisions. Subdivision (d) states the Governor is "the designated state officer responsible for negotiating and executing, on behalf of the state," tribal-state compacts. If subdivision (b) intended to limit the Governor's authority to negotiate and execute materially identical compacts, then the Legislature would not have omitted such a limitation from subdivision (d), which expressly addresses the scope of the Governor's authority. *See Prang v. Amen*, 58 Cal. App. 5th 246, 254 (2020) ("[Courts] may neither insert language which has been omitted nor ignore language which has been inserted."). Moreover, subdivision (e) provides, "[f]ollowing completion of negotiations conducted pursuant to subdivision (b) or (c), the Governor shall submit a copy of an executed tribal-state compact to both houses of the Legislature for ratification[.]" This description of subdivision (b) compacts as being executed following "negotiations" runs contrary to Alturas's proposed interpretation that subdivision (b) does not permit negotiations over such a compact's material terms. *See* Opp'n & Mot. Summ. J. at 8. Similarly, subdivision (b)(2) confines the Legislature's exercise of its veto power to the period after which the Governor submits the compact to the Legislature, which suggests no diminution of the Governor's negotiating role.

Moreover, the statute's unambiguous meaning is supported by its title and placement in the Government Code. First, section 12012.25 is titled "Ratification of tribal state compacts." This section ratifies 57 tribal-state gaming compacts and provides the ratification procedure for

5

compacts materially identical to those 57 compacts. The court reads "ratification" as meaning just that, ratification. Second, the section is located alongside a voluminous series of statutes ratifying tribal-state gaming compacts. *See* Cal. Gov't Code §§ 12012.5 (ratifying 11 tribal-state compacts and providing subdivision (b) ratification procedure for materially identical compacts), 12012.30 (ratifying one tribal-state compact), 12012.35 (ratifying two tribal-state compacts), 12012.40 (ratifying amendments to several tribal-state compacts), 12012.45–12012.108 (ratifying more than 60 tribal-state agreements). None of those statutes diminishes the Governor's authority to negotiate and execute agreements.

The statute's unambiguous meaning also is consistent with the state Constitution's division of authority. If the court were to accept Alturas's proposed interpretation it would run afoul of the canon of constitutional avoidance. California's Constitution authorizes the Governor "to negotiate and conclude compacts, subject to ratification by the Legislature[.]" Cal. Const., Art. IV, § 19(f). It does not empower the Legislature to circumscribe the Governor's express power to negotiate and conclude compacts. Alturas's proposed interpretation would require this court to grapple with whether the Legislature possesses that power, as Alturas acknowledged during oral argument. Even if Alturas's proposed interpretation were plausible, this court would still decline to adopt it because it would require wrestling with a serious constitutional question that otherwise could be avoided. *See People v. Chandler*, 60 Cal. 4th 508, 524 (2014).

Lastly, as noted by defendants, under Alturas's proposed interpretation, tribes could "demand and receive automatic twenty-year extensions of their 1999 Compact in perpetuity, defeating the purpose of a twenty-year term limit." Reply & Opp'n at 7. The court also will not interpret section 12012.25 such that one provision moots another provision. *See Mendoza v. Nordstrom, Inc.*, 2 Cal. 5th 1074, 1087 (2017) ("[T]he Legislature does not engage in idle acts, and no part of its enactments should be rendered surplusage if a construction is available that avoids doing so."). In short, the court takes the Legislature at its words. This statute's plain language and structure provides a ratification process for compacts successfully negotiated with the state by the Governor. It does not provide an independent entitlement to tribes.

Alturas also argues section 12012.25(b) "offered [subdivision (a) compact] terms to all Indian tribes," Opp'n & Mot. Summ. J. at 12, but as explained above, this interpretation is unsupported by the plain language of the statute, irreconcilable with the statute's structure, at odds with its placement in the code and asks an unnecessary constitutional question. Alturas points to the California Supreme Court's recent decision in *United Auburn Indian Community v. Newsom*, 10 Cal. 5th 538 (2020), to support its position, *see* Opp'n & Mot. Summ. J. at 9–11, but that decision compels the opposite conclusion.

In *United Auburn*, the state Supreme Court addressed whether the Governor's constitutional authority to negotiate and conclude tribal-state compacts included the implied power to concur in the U.S. Interior Secretary's determination to allow gaming on tribal land. 10 Cal. 5th at 550. Because the Governor had a long-standing role as the state's representative, a long history of concurring in cooperative-federalism schemes and express authority under the state Constitution to negotiate and conclude tribal-state compacts, the Court held the Governor possessed an implied power to concur. *Id.* at 566. Alturas's reliance on *United Auburn* is misplaced because the decision addressed an implied power, not an express one. In addition, although Alturas claims the Governor's authority to negotiate and conclude tribal-state compacts is legislative because it is located in Article IV, which establishes primarily legislative powers, *see* Opp'n & Mot. Summ. J. at 9, the state Supreme Court expressly rejected that argument in *United Auburn*, *see* 10 Cal. 5th at 558 ("[W]e decline to characterize the Governor's concurrence as a legislative act simply because Proposition 1A added a provision to article IV of the California Constitution."). Lastly, Alturas describes *United Auburn* as delineating the Legislature's authority to curtail the Governor's negotiate-and-conclude power, *see* Opp'n & Mot. Summ. J. at 11, but this description is erroneous, too. The state Supreme Court explained the Legislature could circumscribe the Governor's concurrence power, for example, by requiring ratification of concurrence in the same way the Legislature has provided the current requirement for ratification of compacts following negotiation and execution. *United Auburn*, 10 Cal. 5th at 563–64. In *United Auburn*, the state Supreme Court does not address the possibility of limiting the Governor's express constitutional authority, nor does it sanction limitations beyond

ratification. To the contrary, it describes the constitutional scheme as a division of powers: the Governor has authority to negotiate and conclude compacts and the Legislature has authority to ratify those compacts. *Id.* at 562. *United Auburn* not only does not support Alturas's position, it undermines it.

In sum, Section 12012.25(b) does not create a tribal entitlement. Alturas's sixth and seventh claims are dismissed.

### B.  Leave to Amend

If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made[.]" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016). However, leave to amend should be denied when the plaintiff could not amend the complaint to state a viable claim without contradicting the complaint's original allegations. *See Garmon v. County of Los Angeles*, 828 F.3d 837, 845–46 (9th Cir. 2016).

At hearing, Alturas requested leave to amend if the court chose to dismiss the sixth and seventh claims. It explained it could state an alternative claim on the same grounds under IGRA. However, Alturas's seventh claim is an IGRA claim, predicated on the notion a section 12012.25 violation also violates IGRA's good-faith requirement. But without the predicate state law violation, that IGRA claim cannot proceed. Fundamentally, Alturas's sixth and seventh claims are premised on the legal conclusion that section 12012.25(b) creates an entitlement to a materially identical compact, subject to the Legislature's veto. Section 12012.25(b) offers no such entitlement, so Alturas could not amend its complaint to state viable claims under the statute.

### IV.  CONCLUSION

As explained above, the court **grants** defendants' motion to dismiss. Alturas's sixth and seventh claims for relief are **dismissed with prejudice**. As a result, the court **denies as moot** Alturas's motion for summary judgment on those claims.

This matter remains **referred** to Magistrate Judge Dennis H. Cota for pretrial scheduling. Min. Order (Sept. 2, 2022), ECF No. 13; *see also* Judge Cota's Prior Order (Nov. 21, 2022), ECF No. 21 (vacating scheduling conference pending resolution of defendants' motion to dismiss). The pretrial scheduling conference will be set by Judge Cota.

1   This order resolves ECF Nos. 20, 24.

2   IT IS SO ORDERED.

3   DATED: April 19, 2023.

                                                         CHIEF UNITED STATES DISTRICT JUDGE