UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Alturas Indian Rancheria,

    Plaintiff,

  v.

Gavin Newsom and the State of California,

    Defendants.

No. 2:22-cv-01486-KJM-DMC

ORDER

Plaintiff Alturas Indian Rancheria brings this action against defendants Governor Gavin Newsom and the State of California, challenging the State's negotiating position with respect to a new tribal-state gaming compact. Alturas claims the State did not negotiate the compact in good faith as required by the federal Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2701 *et seq*. Both parties move for summary judgment. For the reasons stated below, **Alturas's motion is granted, and the State's motion is denied.**

**I.    BACKGROUND**

This lawsuit addresses the Governor's conduct on behalf of California during the tribal-state compact negotiations with Alturas. The court previously dismissed Alturas's sixth and seventh claims for relief under California state law. *See* Prior Order, ECF No. 38. Both motions for summary judgment pertain to the remainder of the claims, claims one through five, which

1  seek relief under IGRA.  *See* Compl. ¶¶ 181–215; 25 U.S.C. § 2710(d)(3)–(d)(4); *see generally*,
2  Alturas Mot. Summ. J., ECF No. 48–1; State Mot. Summ. J, ECF No. 49-1.
3        Congress passed IGRA in 1988 "to provide a statutory basis for the operation [and
4  regulation of gaming] by Indian tribes."  *See* 25 U.S.C. § 2702.  IGRA allows states to play a role
5  in regulating gaming through negotiation of tribal-state compacts.  *See id.* at § 2710.  It also
6  places restrictions on the state's role.  "IGRA strictly limits the topics that states may include in
7  tribal-state Class III compacts to those directly related to the operation of gaming activities.
8  States are also required to negotiate compact agreements in good faith."  *Chicken Ranch*
9  *Rancheria of Me-Wuk Indians v. California*, 42 F.4th 1024, 1029 (9th Cir. 2022) (citations
10 omitted).  IGRA's restrictions reflect the vital role gaming can play for tribes, as "Class III
11 gaming is not only 'a source of substantial revenue' for tribes, but the lifeblood on 'which many
12 tribes ha[ve] come to rely.'"  *Id.* at 1032 (internal citations omitted) (alteration in original).  The
13 restrictions also reflect the "risks inherent in the state compact approval requirement."  *Id.*
14 "Indian tribes, who rely on gaming for economic revenue, are at the potential mercy of the states,
15 which could withhold approval of Class III gaming rights or insist upon onerous compact
16 conditions that would give states greater power to regulate tribes."  *Id.*
17       If a tribe believes the state has not negotiated in good faith, it can sue the state in federal
18 court after 180 days have passed since "the date on which the Indian tribe requested the State to
19 enter into negotiations[.]"  25 U.S.C. § 2710(d)(7)(B)(i).  If a court finds a state did not negotiate
20 in good faith because it sought to negotiate an "off-list topic," *see id.* at § 2710(d)(3)(C) (listing
21 permissible negotiation topics under IGRA), such "off-list" negotiation is a *per se* violation of the
22 state's duty to negotiate in good faith, and the court need not consider "good faith factors"
23 relevant to other good faith inquiries regarding negotiations on permitted topics, *Chicken Ranch*,
24 42 F.4th at 1046–49.  Regardless of how many violations of good faith a court may find, IGRA
25 provides for a single remedy, which imposes a concise timeline and process for resuming
26 negotiations to ensure the conclusion of a compact.  *See* 25 U.S.C. § 2710(d)(7)(B)(iii)–(vii).
27       The following facts are undisputed unless otherwise noted.  Alturas is a federally
28 recognized Indian tribe.  Joint Statement of Undisputed Material Facts ("JSUMF") ¶ 1, ECF 48-3;

Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 87 Fed. Reg. 4636-02, 4636 (Jan. 28, 2022).[1] In 1999, Alturas, along with fifty-seven other California Indian tribes, concluded tribal-state compacts for gaming. Compl. ¶ 50, ECF No. 1; Cal. Gov't Code § 12012.25(a)(1). On May 7, 2020, Alturas contacted the Governor to negotiate a new gaming compact. Alturas Negotiations Req., Joint Record of Negotiations ("JRON") Tab 1 at 2, ECF No. 1-2;[2] JSUMF ¶ 8. The parties held two negotiation sessions, the first on November 19, 2021, and the second on December 30, 2021. *See* Compl. ¶¶ 126, 133; JSUMF ¶¶ 17, 27.

The State initially provided Alturas with a sample compact as a starting point. State Email Sample Compact, JRON Tab 27 at 315, ECF No. 1-2; JSUMF ¶ 20. Alturas responded with a revised draft on December 22, 2021, Alturas Email Revised Draft, JRON Tab 44 at 106, ECF No. 1-3; JSUMF ¶ 26, and the State responded on January 18, 2022 with a revised version of the draft Alturas shared, JSUMF ¶ 29; State Email Revised Draft, JRON Tab 50 at 329, ECF No. 1-3. In addition to redlined drafts, the parties exchanged several emails and letters discussing the negotiations and assessing each other's positions and requests. *See, e.g.*, Compl. ¶¶ 146, 151; Letter from Alturas, JRON Tab 69 at 23–45, ECF No. 1-4; Letter from State, JRON Tab 126 at 248, ECF No. 1-3. In its December 2021 revised draft, Alturas redlined numerous provisions, including completely removing or limiting provisions requiring the tribe to adopt certain environmental law policies in Section 11 and tort law policies in Section 12.5. *See* Alturas's Revised Draft, JRON Tab 45 at 209–42, 247–49, ECF No. 1-3. In the State's January 2022 revised draft, it reinserted environmental and tort law provisions Alturas had suggested removing,

---

[1] The court takes judicial notice of the facts contained in sources cited in the JSUMF and JRON, which are referenced by both parties and cannot be reasonably questioned. Facts are indisputable, and thus subject to judicial notice, only if they are either "generally known" under Rule 201(b)(1) or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned" under Rule 201(b)(2)). Fed. R. Evid. 201(b). Furthermore, "[courts] may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citations omitted).

[2] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

1  and deleted limitations Alturas added to the provisions. *Compare id.* at 209–42, *with* State's
2  Revised Draft, JRON Tab 51 at 424–56, ECF No. 1-3; *compare* Alturas's Revised Draft at 247–
3  49, *with* State's Revised Draft at 461–63. The State left a comment at the beginning of Section
4  11 on environmental provisions, mentioning it would be willing to compromise on select
5  environmental provisions. *See* State's Revised Draft at 424. Additionally, the State left a
6  comment at the beginning of Section 12.5 noting in 2004 the Department of Interior had approved
7  language the tribe had deleted. *See id.* at 461.

   Before the State shared its revised draft, the District Court in *Chicken Ranch* had already
deemed similar environmental and tort law provisions to be "off-list topics" and consequently
unlawful, though on different grounds than those later articulated by the Ninth Circuit on appeal.
*See Chicken Ranch Rancheria of Me-Wuk Indians v. Newsom*, 530 F. Supp. 3d 970 (E.D. Cal.
2021), *aff'd on other grounds sub nom. Chicken Ranch*, 42 F.4th 1024. The Ninth Circuit
decided *Chicken Ranch* after the State shared its revised draft in January 2022. 42 F.4th 1024.
The parties did not conclude a compact before Alturas filed this suit on August 22, 2022. *See*
Compl. ¶¶ 144–51; JSUMF ¶¶ 37–40.

   Both parties now move for summary judgment. *See* Alturas Mot. Summ. J.; State Mot.
Summ. J. The motions are fully briefed. *See* Alturas Opp'n, ECF No. 50; State Opp'n., ECF No.
51; Alturas Reply, ECF No. 52; State Reply, ECF No. 53. The court held a hearing on these
matters on November 3, 2023. Mins. Hr'g, ECF No. 54. Curtis Vandermolen and Timothy
Hennessy appeared for plaintiff Alturas Indian Rancheria and B. Jane Crue appeared for
defendants Gavin Newsom and the State of California.

**II.   LEGAL STANDARD**

   Summary judgment is appropriate if "there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is
"genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome
of the suit under the governing law." *Id.* The parties must cite "particular parts of materials in
the record." Fed. R. Civ. P. 56(c)(1). The court then views the record in the light most favorable

4

1  to the nonmoving party and draws reasonable inferences in that party's favor. *Matsushita Elec.*
2  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*,
3  398 U.S. 144, 157 (1970). Cross-motions for summary judgment are evaluated separately under
4  the same standard, "giving the nonmoving party in each instance the benefit of all reasonable
5  inferences." *Am. C.L. Union v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

**III.  ANALYSIS**

Alturas argues the undisputed facts show the State did not negotiate in good faith. Claims alleging lack of good faith are evaluated under IGRA's burden shifting standard in which "[t]he tribe bears the initial burden of introduc[ing] . . . evidence that: (1) a Tribal-State compact has not been entered into and (2) the state either failed to respond to the tribe's request in good faith or failed to respond altogether." *Pauma & Yuima Rsrv. v. California*, 973 F.3d 953, 958 (9th Cir. 2020) (*Pauma II*) (internal citations and quotation marks omitted). If the tribe meets its initial burden, the burden then shifts to the state to establish it negotiated in good faith. *Id.*

Here, Alturas has met its burden with respect to the first element: a Tribal-State compact was not concluded before Alturas filed suit. *See* State Mot. Summ. J. at 12; Compl. at 41. The remaining necessary element is "the state either failed to respond to the tribe's request 'in good faith' or failed to respond altogether." *Pauma II*, 973 F.3d at 958 (citations omitted). Alturas's claims are based on the former "good faith" requirement. *See* Compl. ¶¶ 181–215.

By providing evidence the State negotiated "off-list topics," Alturas has met its initial burden. In the Joint Record of Negotiations filed with its complaint, Alturas provided evidence showing: (1) the sample compact the parties used as a base draft included environmental law and tort law provisions; (2) Alturas's revised draft removed entire provisions within—or added language to limit—the sections on environmental law and tort law; (3) the State's revised draft subsequently reinserted provisions Alturas had taken out or removed the limiting language Alturas added and (4) the parties exchanged several emails and letters discussing revisions to these provisions. *See Chicken Ranch*, 42 F. 4th at 1029, 1034 (holding environmental law and tort law provisions to be "off-list topics" under IGRA and relevant case law, and holding the state did not act in good faith when it negotiated these topics); *compare* Alturas's Revised Draft at

5

209–42, *with* State's Revised Draft at 424–56; *compare* Alturas's Revised Draft at 247–49, *with* State's Revised Draft at 461–63; Letter from Alturas at 23–45; Letter from State at 248.

The burden thus shifts to the State to establish it did negotiate in good faith. The State describes myriad ways in which it alleges it has demonstrated good faith. However, in *Chicken Ranch*, the Ninth Circuit held the State's negotiation of environmental law and tort law provisions to be *per se* evidence of the State's lack of good faith. *See Chicken Ranch*, 42 F.4th at 1034, 1037–39. The court explained when a state "seeks to negotiate for compact provisions that fall well outside IGRA's permissible topics of negotiation, the state has not acted in good faith." *Id.* at 1034. Furthermore, characterizing negotiation of "off-list topics" as good faith "would render the exhaustive list of negotiating topics non-exhaustive, which is unacceptable as a matter of both statutory interpretation and governing precedent." *Id.* at 1044. To the extent the State did act in good faith in part, that carries no weight in light of the *per se* violation. *See id.*; *see also Rincon Band of Luiseno Mission Indians of Rincon Rsrv. v. Schwarzenegger*, 602 F.3d 1019, 1041 (9th Cir. 2010) ("We therefore hold that good faith should be evaluated objectively based on the record of negotiations, and that a state's subjective belief in the legality of its requests is not sufficient to rebut the inference of bad faith created by objectively improper demands.").

Here, the undisputed facts show the State negotiated "off-list topics." The JRON makes clear the state reinserted—and sought to negotiate—environmental law and tort law provisions similar to those at issue in *Chicken Ranch*. *Compare* Alturas's Revised Draft at 209–42, *with* State's Revised Draft at 424–56; *compare* Alturas's Revised Draft at 247–49, *with* State's Revised Draft at 461–63. Under *Chicken Ranch*, negotiating these "off-list topics" is a violation of the State's duty to negotiate in good faith. *Chicken Ranch*, 42 F.4th at 1034, 1040, 1049; *Berry Creek Rancheria of Maidu Indians, et al. v. California*, No. 21-02284, 2023 WL 7022427, at *1–2 (E.D. Cal. Oct. 25, 2023) (holding California did not act in good faith when it sought to negotiate impermissible topics, including tort law and environmental law provisions, under the Ninth Circuit's holding in *Chicken Ranch*). Accordingly, there is no genuine dispute of material fact as to whether the State negotiated in good faith. Although the court can end its analysis here, the court briefly considers and rejects the State's arguments.

6

Despite negotiating "off-list topics," the State nonetheless argues it acted in good faith and discusses how it met the good faith factors under 25 U.S.C. § 2710. *See* State Mot. Summ. J. at 17–23. However, the court in *Chicken Ranch* held analysis of the good faith factors in 25 U.S.C. § 2710(d)(7)(B)(iii)(I) is not necessary when deciding whether the State acted in good faith by including an "off-list topic" in the negotiations. *See Chicken Ranch*, 42 F.4th at 1048 (deciding the court does not analyze the good faith factors in § 2710(d)(7)(B)(iii)(I) "when it comes to off-list topics [that go] well beyond IGRA's permitted list, [because] Congress's entire scheme of limiting the parties to topics directly related to gaming operations would be fatally undermined"). As the court articulated in *Chicken Ranch*, the State's attempts to negotiate "off-list" provisions not directly related to the operation of gaming activities "strike at core aspects of tribal sovereignty concerning the tribes' governance over their land and people and their decisions about how to structure entire areas of tribal law." *Id.* at 1039.

The State argues *Chicken Ranch* is distinguishable from this case because the negotiations in *Chicken Ranch* were much more extensive. *See* State Opp'n at 13, ECF No. 51. In support, the State cites the total time span of negotiations, the cumulative number of days spent in negotiation sessions and the number of compact drafts exchanged between the parties in both cases. *See id*. However, nothing the Ninth Circuit states in *Chicken Ranch* suggests the extensive record of negotiations between the parties in that case was a decisive factor in the court's holding. *See generally Chicken Ranch*, 42 F.4th 1024. Instead, the court clearly states, "[w]e hold that by negotiating for topics well outside [25 U.S.C.] § 2710(d)(3)(C)'s permitted list, California did not bargain in good faith." *See id.* at 1049. Though it is clear the negotiation record in *Chicken Ranch* is more extensive than the negotiation record between the State and Alturas, this difference is not determinative. *See Chicken Ranch*, 42 F.4th at 1030 (describing the State and Chicken Ranch Rancheria of Me-Wuk Indians held 39 negotiation sessions, exchanged at least 12 drafts, and negotiated for approximately 5 years). The State selectively emphasizes aspects of the Ninth Circuit's decision in *Chicken Ranch*, using more demanding verbs such as "insist" or "demand," to distinguish *Chicken Ranch* from this case based on the number of requests or alleged forcefulness with which the State negotiated the "off-list topics." *See* State Mot. Summ. J. at 17–

7

18; State Opp'n at 12, 16–17. However, the passages the state cites are from the court's description of its finding in the context of the facts in that case. The *Chicken Ranch* court described its general holding several times: a state acts in bad faith when it "negotiat[es]" or "seeks to negotiate" "off-list topics," particularly the environmental law, tort law and family law provisions at issue in that case. *See Chicken Ranch*, 42 F.4th at 1034, 1040, 1049.

The State also argues Alturas's lawsuit was "premature," State Mot. Summ. J. at 22, or "incomplete," *id.* at 15. Neither of these arguments is meritorious. Under IGRA, tribes are permitted to file suit 180 days after "the date on which the Indian tribe requested the state to enter into negotiations[.]" 25 U.S.C. § 2710(d)(7)(B)(i). Alturas first contacted the State to begin negotiations on May 7, 2020, more than two years prior to Alturas's filing this suit on August 22, 2022. Compl. ¶¶ 114, 233; JSUMF ¶¶ 8, 38. Even if the State argues the negotiations did not truly begin until the first negotiation was held via videoconference on November 19, 2021, Alturas's suit is still timely under the 180-day rule, as it was not filed until nine months after the first negotiation. *See* Compl. ¶ 126; JSUMF ¶ 17; 25 U.S.C. § 2710(d)(7)(B)(i); *see also Estom Yumeka Maidu Tribe of the Enter. Rancheria v. California*, 163 F. Supp. 3d 769, 782 (E.D. Cal. 2016) ("Although the filings with this Court indicate that Plaintiff sent a request to begin compact negotiations with the governor as far back as 2000, the Court finds that, at minimum, the negotiations that occurred in August, 2012 establish that the 180-day requirement . . . is met."); *but cf. Pauma II*, 973 F.3d at 962 (abstaining from incomplete negotiations when deciding procedural bad faith claims).

The State also heavily relies on *Pauma II* to argue it acted in good faith. In *Pauma II*, the Pauma Luiseno Band of Mission Indians similarly sued the State for relief under IGRA. *Pauma II*, 973 F.3d at 957. However, much of the language the State cites from *Pauma II* pertains to the court's holding "a state is not guilty of *procedural* bad faith if it 'remained willing to meet with the tribe for further discussions.'" *Pauma II*, 973 F.3d at 958 (emphasis added) (citation omitted). Moreover, the issue in that case was the negotiation of permissible topics whereas *Chicken Ranch* focused on the negotiation of impermissible "off-list topics." *Compare Pauma II*, 973 F.3d at 966, *with Chicken Ranch*, 42 F.4th at 1034. When considering good faith claims under IGRA,

8

1    courts consider both procedural and substantive good faith.  *See In re Indian Gaming Related*
2    *Cases*, 331 F.3d 1094, 1109–17 ("*Coyote Valley*") (discussing and deciding the Coyote Valley
3    Band of Pomo Indians' procedural and substantive claims of bad faith separately).  In its motion,
4    the State acknowledges the distinction between procedural and substantive good faith under
5    IGRA.  *See* State Mot. Summ. J. at 18.  Even if the State demonstrates it acted in good faith
6    procedurally, its reinsertion and negotiation of environmental law and tort law provisions into
7    Alturas's revised draft compact is sufficient for finding the State did not act in good faith.
8    Nothing in *Pauma II* negates the holding in *Chicken Ranch*.

9  Because the State's negotiation of "off-list topics" violates its duty to negotiate in good
10   faith, there is no genuine dispute of material fact as to whether the State acted in good faith.  For
11   the foregoing reasons, the court **grants Alturas's motion for summary judgment and denies**
12   **the State's motion for summary judgment as to the State's lack of good faith.**

13  This finding alone triggers IGRA's remedial provision.  Because IGRA only provides a
14   single remedy, the court sees no need to resolve Alturas's remaining allegations against the State.
15   *See also Yavapai-Prescott Indian Tribe v. Arizona*, 796 F. Supp. 1292, 1294, 1296, 1298 (D.
16   Ariz. 1992) (declining to provide the Yavapai-Prescott Indian Tribe declaratory relief regarding
17   whether a particular act involving gaming was "within the meaning of [IGRA]").  Although
18   Alturas requests an order directing the parties as to each issue raised in Alturas's motion, *see*
19   Alturas Mot. Summ. J. at 25, the court **declines** to do so here.

20   **IV.   CONCLUSION**

21  The court **grants Alturas's motion for summary judgment, denies the State's motion**
22   **for summary judgment and retains jurisdiction**.  The court directs the parties to proceed under
23   IGRA's remedial framework under the court's continued supervision, which first requires the
24   parties resume negotiations to conclude a tribal-state gaming compact within sixty days of the
25   filing of this order.  The court directs the parties to file a Joint Status Report within seven (7) days
26   after the 60-day period ends informing the court whether the parties have concluded a compact or
27   whether they will proceed with the next step in the remedial process and "each submit to a

9

mediator appointed by the court a proposed compact that represents their last best offer for a compact." 25 U.S.C. § 2710(d)(7)(B)(iv).

This order resolves ECF Nos. 48 and 49.

IT IS SO ORDERED.

DATED: February 27, 2024.

CHIEF UNITED STATES DISTRICT JUDGE